DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, William and Mae Pelster, appeal from a judgment of the Summit County Court of Common Pleas that denied their motion for a preliminary injunction to prevent the construction of a house on property within their subdivision. This Court reverses and remands the case to the trial court.
The property that is the subject of this dispute is located in the Westhaven Colony subdivision in Hudson, Ohio. Westhaven Colony consists of several phases, the first of which was subdivided in 1955. At that time, each lot was subject to several restrictive covenants, including that only one single-family dwelling could be built on each lot. Among the original lots was Lot Twelve, located at 892 Westhaven Drive. A single-family residence was constructed on Lot Twelve in 1959.
During 1974, the developer re-subdivided Phase One Lots Nine, Ten, and Eleven to construct Phase Seven. Hickory Lane was constructed through the middle of the former Lots Nine and Ten, which were re-platted as Lots One, Two, Three, and Four of Phase Seven. Hickory Lane gave access to several newly platted lots in Phase Seven, including the lot that was purchased by the Pelsters in 1994, where they continue to reside. A new plat map of the area was filed with the county recorder. The plat map included several restrictive covenants, including a restriction that only one single-family residence could be built on each of the platted lots.
In addition to giving access to the Phase Seven Lots, Hickory Lane gave access to the back portion of Phase One's Lot Twelve. During 1991, apparently because Lot Twelve had become accessible from the back, its owner split the lot. In 1998, appellees, Luther and Sandra Millsaps ("defendants") purchased the back part of Lot Twelve, intending to build a single-family residence on it. Because a house already sat on the Westhaven Drive side of Lot Twelve, the Pelsters believed that the defendants could not build another house on the lot without violating the restrictive covenant. Consequently, the Pelsters brought this action, seeking to enjoin the defendants from constructing a house on their property.
The trial court granted a temporary restraining order during the pendency of the proceedings below. After an evidentiary hearing, however, the trial court denied the Pelsters' motion for a preliminary injunction. The trial court reasoned that the Pelsters had failed to establish a substantial likelihood of success on the merits or that they would suffer irreparable harm if the construction was not enjoined. The Pelsters timely appealed.
Initially, this Court must address the issue of whether this appeal has become moot due to the construction of a house on the defendants' property. Ohio courts are authorized to decide only actual controversies where the judgment can be carried into effect and should not give opinions upon moot questions. Travis v. Pub.Util. Comm. of Ohio (1931), 123 Ohio St. 355, paragraph two of the syllabus. Although the Pelsters' claim to enjoin the construction of the house may have become moot, to the extent that the construction of the house is now substantially complete, the Pelsters' claim for damages has not. Therefore, the question of whether the Pelsters were improperly denied a preliminary injunction is not a moot issue.
Moreover, the matter heard by the trial court was not the full merits of this case; rather, it was whether the Pelsters were entitled to preserve the status quo while this matter was litigated.
 The purpose of a [preliminary] injunction is to preserve and protect the ability of the court to provide an effective judgment on the merits. It is not intended as a remedy for the litigant. Rather, it is a necessary adjunct to the administration of justice, intended as a means of preserving the court's ability to grant effective, meaningful relief after a determination of the merits.
Gobel v. Laing (1967), 12 Ohio App.2d 93, 94. In ruling on a motion for a preliminary injunction, the court must consider whether: (1) the movant has shown a substantial likelihood of success on the merits, (2) the movant will suffer an irreparable injury, (3) a preliminary injunction could harm third parties, and (4) the interest of the public will be served by granting a preliminary injunction. Johnson v. Morris (1995), 108 Ohio App.3d 343,352.
The trial court's decision to grant or deny a preliminary injunction will not be reversed on appeal absent an abuse of discretion. Id. at 351-352. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
The trial court's judgment hinged on its determination that the Pelsters did not have a substantial likelihood of success on the merits of their claim. According to the trial court, the Pelster's claim was not likely to succeed because the restrictive covenant, that only one single-family dwelling can be constructed on each lot, was not enforceable. Although no one disputed that all the lots in Phase One and Phase Two of Westhaven Colony are subject to such a restriction, the trial court concluded that the meaning of the term "lot" was ambiguous because several of the original lots had been re-platted. That conclusion constituted an abuse of discretion, given the evidence before the trial court.
The trial court found an ambiguity in the meaning of the term "lot" because the several of the subdivision lots, including Lot Twelve, had been re-platted as smaller lots. The trial court had no evidence before it, however, to support its finding that Lot Twelve had ever been re-platted. The evidence before the trial court consisted primarily of the 1955 and 1974 plat maps of Phase One and Phase Seven of Westhaven Colony. The lot at issue, Phase One's Lot Twelve, is essentially the same in both plat maps. Although the trial court apparently concluded that there had been a re-platting of Lot Twelve in 1991, there is nothing in the record to indicate that there was any re-platting of the subdivision in 1991 or that Lot Twelve was ever re-platted into smaller lots. Instead, it appears that, because the back of Lot Twelve had become accessible from Hickory Lane, the owner split the lot in 1991. There is no evidence to indicate that the division of lot was ever recorded with the county recorder's office until the sale of the property to the defendants.
Therefore, what constitutes a "lot" within Phase One and Phase Seven of the Westhaven Colony subdivision can clearly be determined by reference to the 1955 and 1974 plat maps. There is no ambiguity in the meaning of the term. According to the plats maps, Lot Twelve was and is a single lot. By purchasing a portion of the lot and commencing with construction of a second house on Lot Twelve, the defendants were clearly violating the restrictive covenant. This is exactly the type of harm the restrictive covenant was intended to prevent.
The trial court also erred in concluding that the Pelsters did not prove that they would suffer irreparable harm if construction of the defendants' house was not enjoined. The Pelsters established that construction of the house was imminent and that once the defendants' house was built, two houses would sit on Lot Twelve in direct violation of the restrictive covenant. This portion of Lot Twelve, which the Pelsters reasonably expected to remain vacant, lies across the street from their house. The Pelsters were not required to prove actual damages to enforce the restrictive covenant. See Goutras v. Rea (Sept. 30, 1991), Stark App. No. CA-8349, unreported, citing Brown v. Huber (1909),80 Ohio St. 183 and Arthur v. Bender (1951), 90 Ohio App. 187.
Therefore, the trial court abused its discretion by failing to grant the Pelsters a preliminary injunction while this action proceeded to a trial on the merits. The assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
Exceptions.
BETH WHITMORE FOR THE COURT BAIRD, P.J.
BATCHELDER, J.
CONCUR